FILED

Mar 23 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ANNA NGUYEN (CABN 335873)
Special Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   Fax: (415) 436-7234
   Anna.Nguyen@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>OMAR ZELAYA,<br><br>   Defendant. | CASE NO. 3:23-CR-00075 WHA<br><br>**MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION**<br><br>**[UNDER SEAL]**<br><br>Date:  March 24, 2023<br>Time:  10:00 AM<br>Court:  Hon. Lisa J. Cisneros |

## I. INTRODUCTION

On March 7, 2023, a federal grand jury in the Northern District of California returned an indictment charging Defendant, Omar Zelaya, with five counts of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Dkt. 1. The five counts pertain to cocaine (Count One), fentanyl (Counts Two, Four, and Five), and methamphetamine (Count Three). Moreover, on March 16, 2023, in Oakland, on the day of Defendant's federal arrest and execution of a federal search warrant, Defendant fled from officers to avoid arrest and discarded suspected fentanyl with a gross weight of 101 grams and methamphetamine with a gross weight of 54 grams.

The record demonstrates Defendant is both a danger to the community and a significant flight risk. He cannot overcome the presumption that there are no conditions or combination of conditions that can secure his appearance before the Court or provide for the safety of the community. Accordingly, the government respectfully requests the Court order Defendant detained pending trial.

## II. FACTUAL BACKGROUND

On the morning of March 16, 2023, after obtaining federal warrants for Defendant's arrest and a search of his premises, San Francisco Police Department (SFPD) officers were surveilling Defendant's residence in Oakland. Defendant is a repeat fentanyl dealer who primarily deals fentanyl and methamphetamine in San Francisco's Tenderloin neighborhood, in particular, in the area near Seventh and Market streets—within a one block radius of the federal building, the Ninth Circuit Court of Appeals, a preschool, and a methadone clinic. Defendant previously sold fentanyl and cocaine to undercover officers (UCs) on at least three different occasions in this area between October 2022 and January 2023. Additionally, Defendant had been arrested on September 27, 2022 after—again—running from SFPD officers who attempted to arrest him after on-viewing drugs in possession; on that occasion too, Defendant had in his possession cocaine, fentanyl, and methamphetamine. Notably, Defendant has been on state pre-trial release since then, during which he repeatedly sold drugs to UCs.

On March 16, 2023, at approximately 7:58 AM, officers sent text messages to Defendant's known cell phone number to arrange a drug transaction. Defendant responded that he had the drugs and was available to meet that morning at a location just a few blocks away from his residence in Oakland.

At approximately 8:39 AM, officers observed Defendant leave his residence and walked in the

direction towards the agreed upon meet-up location.  When officers attempted to arrest Defendant, he immediately fled from the officers.  The officers chased Defendant on foot and gave verbal commands for Defendant to stop but he continued to double back and evade the officers.  As Defendant fled, officers observed him toss aside two separate bags of suspected narcotics that were later seized.  When officers finally apprehended Defendant, he continued to fight and resist as the officers tried to place him under arrest.  The two separate bags of discarded suspected narcotics were processed and are believed to be suspected fentanyl with a gross weight of 101 grams and suspected methamphetamine with a gross weight of 54 grams.

     A subsequent search of Defendant's residence revealed digital scales and clear plastic bags consistent with packaging materials for narcotics.

### III.   LEGAL STANDARD

     Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

     "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Where there is probable cause that a defendant has violated an offense for which a maximum of ten years in prison or more is prescribed in the Controlled Substances Act, courts apply a rebuttable presumption that no condition or combination of conditions will reasonably assure Defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production shifts to Defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if Defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See id.* (citation omitted).

### IV.    ARGUMENT

#### 1. <u>Defendant faces a rebuttable presumption in favor of detention.</u>

When Defendant was arrested, he discarded large amounts of fentanyl and methamphetamine that he possessed while he was likely enroute to meet with the UC to complete a drug transaction. The variety and total quantities of drugs are consistent with an intent to distribute. Adding up the amounts of narcotics sold or seized across all of Defendant's law enforcement contacts since October 2022, Defendant had a total combined drug weight of approximately 239 grams of fentanyl, 68 grams of methamphetamine, and 15 grams of cocaine. There is probable cause to believe Defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, and the relevant conduct reveals a consistent pattern of narcotics trafficking. As a result, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). As described below, Defendant will be unable to overcome this presumption.

#### 2. <u>Defendant cannot overcome the presumption that he is a flight risk.</u>

Defendant has no known permanent address and is considered a "transient" according to his criminal history sheet. At the same time, Defendant's status in the United States is unclear and a search of his residence revealed several Honduras passports issued to other individuals. Defendant previously fled from SFPD officers when arrested on September 17, 2022, fled again on the morning of his federal arrest, and in the meantime, sold at least 85 grams of fentanyl (not including the drugs he had in his possession at the time of the two arrests), all while on pre-trial release pending a state court case.

Defendant is not amenable to supervision and accordingly is a demonstrable flight risk.

Defendant has shown he possesses the financial means to abscond as he possessed narcotics with a street value of over $5,000.  He also chose to discard approximately 101 grams of fentanyl and 54 grams of methamphetamine in the streets of Oakland.  It is also reasonable to think that he has connections to networks that may assist him in his flight from court-imposed oversight given his access to over 362 grams of total combined weight of drugs, over a six-month period.

Lastly, Defendant faces a serious penalty if convicted.  Even if the safety valve were to apply, Defendant still faces a Guidelines range of thirty to thirty-seven months (assuming acceptance) — which is not insignificant.  That penalty—more severe than any penalty he has faced to date—creates a strong incentive for Defendant to flee immediately if released.  *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (strong evidence of guilt "makes it more likely that he will flee").  The preponderance of the evidence supports finding Defendant to be a flight risk.

### 3. Defendant cannot overcome the presumption that he is a danger to the community.

Although all controlled substances are dangerous, fentanyl is particularly so.  Just two milligrams of fentanyl can kill, and Defendant was caught in this instant with possession of 101 *grams* not including the fentanyl seized from his arrest in October 2022, and the fentanyl he sold to the UC in December 2022 and January 2023.  In between the transactions with the UC in December 2022 and January 2023, Defendant sent numerous text messages to the UC to share his inventory and quality of narcotics along with photographs to see if the UC would want to purchase from him.  If Defendant is released and able to continue distributing any controlled substances—but particularly fentanyl—that poses a severe danger to the community and all those who come to the Tenderloin and surrounding areas searching for fentanyl or who even inadvertently come into contact with the substance.  *See, e.g.*, *United States v. Alfonso Ramos*, No. 3:20-mj-71799-MAG-1 (EJD), 2020 U.S. Dist. LEXIS 244831, at *7 (N.D. Cal. Dec. 29, 2020) (sale of approximately 227 grams of fentanyl showed defendant posed a danger to the community because "[f]entanyl is among the most dangerous and deadly illegal drugs").

Notably, Defendant sold fentanyl near Seventh and Market repeatedly—within a block of a federal building, a courthouse, a daycare, and a methadone clinic.  Defendant sold drugs repeatedly—this was not a one-time mistake.  Rather, it was a pattern of calculated business conduct.  Defendant

essentially worked shifts in San Francisco's Tenderloin neighborhood to sell fentanyl as a day job, but also demonstrated that he was willing to sell in his own backyard, so to speak, arranging for the sale of fentanyl near his residence in Oakland. Defendant is a patent danger to the community.

### V.     CONCLUSION

Defendant cannot overcome the presumption that there are no conditions that will reasonably assure his appearance at court proceedings or ensure the safety of the community. The Court should order Defendant detained pending trial.

DATED:  March 23, 2023                                          Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney


*/s/ Anna Nguyen*
ANNA NGUYEN
Special Assistant United States Attorney